Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| LILIAN RODRÍGUEZ PÉREZ<br><br>Peticionaria<br><br>v.<br><br>THE SALVATION ARMY PUERTO RICO DIVISION<br><br>Recurrido | KLCE202500095 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Civil Núm.: AR2023CV02029<br><br>Sobre: Despido Injustificado (Ley Núm. 80) y otros |
|---|---|---|

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de febrero de 2025.

Comparece ante nos The Salvation Army Puerto Rico Division ("Salvation Army" o "Peticionaria") mediante *Petición de Certiorari* presentada el 31 de enero de 2025. Nos solicita la revocación de la *Orden* emitida en corte abierta el 21 de enero de 2025 y notificada mediante *Minuta* el 27 de enero del mismo año por el Tribunal de Primera Instancia, Sala Superior de Arecibo ("foro primario" o "foro *a quo*"). Por virtud de esta, el foro primario permitió como testigos a dos (2) médicos, los cuales fueron anunciados en el *Informe de Conferencia con Antelación a Juicio* y objetados por la Peticionaria.

Por los fundamentos que expondremos a continuación, **desestimamos** el presente recurso.

## I.

El 26 de octubre de 2023, la señora Lillian Rodríguez Pérez ("señora Rodríguez" o "Recurrida") instó *Querella* contra Salvation Army sobre despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como *Ley Sobre Despidos Injustificados,* 29 LPRA sec. 185a *et seq.* y de la *Ley*

Número Identificador

SEN(RES)2025_____

*contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial,* Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA sec. 194 *et seq.*[1] Dicha *Querella* se acogió al procedimiento establecido en la *Ley de Procedimiento Sumario de Reclamaciones Laborales,* Ley Núm. 2 de 17 de octubre de 1961, según enmendada (Ley Núm. 2), 32 LPRA sec. 3118 *et seq.* Mediante esta, alegó que trabajó para la Peticionaria como Directora de Recursos Humanos desde el 3 de mayo de 2021 hasta la fecha de su despido, el 5 de octubre de 2023. Explicó que siempre se desempeñó de manera excelente, pero pese a esto, los supervisores de la Recurrida, quienes además eran los directores de operaciones de la Peticionaria en Puerto Rico, el señor Juan Mercado ("señor Mercado") y la señora Lydia Berberena ("señora Berberena") comenzaron a tomar represalias contra la Recurrida. Especificó que estas acciones de los directivos respondían a unas quejas que hiciera la señora Rodríguez sobre sus términos y condiciones de trabajo y en torno a unas acciones ejecutadas por la Directora de Finanzas, la señora Marielle Descartes ("señora Descartes").

De la misma manera, en la *Querella,* la señora Rodríguez argumentó que el señor Mercado y la señora Berberena le requirieron a la Recurrida un aumento de horas y salario a la hija de estos, la señorita Rebeca Mercado. La Recurrida alegó que objetó esta solicitud, puesto que era contrario a las normas y procedimientos de Salvation Army. Agregó que, como resultado de esta objeción, la Recurrida comenzó a recibir un trato hostil y ofensivo de parte del señor Mercado, la señora Berberena y la señora Descartes. Asimismo, arguyó que la señora Descartes le solicitó tanto a la Recurrida como a empleados del departamento

---

[1] Véase, Apéndice del Recurso, pág. 1-7

de Recursos Humanos a que realizaran cambios en las descripciones de puestos y los requisitos mínimos de las posiciones con el propósito de que ciertas personas, amigos y familiares del señor Mercado, la señora Berberena y la señora Descartes cualificaran en plazas que de otra manera no hubieran cualificado.

De igual forma, la Recurrida señaló que la señora Descartes realizó cambios en las descripciones de puestos para que la hija del señor Mercado y la señora Berberena cualificara para ocupar una de las plazas. La señora Rodríguez aclaró que se negó a realizar estas acciones debido a que contravenían las reglas de Salvation Army, pero a pesar de este reparo, el señor Mercado, la señora Berberena y la señora Descartes la eliminaron del proceso y aprobaron la implementación de los cambios.

De la misma forma, la Recurrida sostuvo que la comadre del señor Mercado y la señora Berberena, la señora Sandra Rodríguez, quien ya era empleada de Salvation Army, fue promovida a Directora de Operaciones y Propiedad, pese a que dicha promoción estaba en contra de todos los procesos internos establecidos y a lo cual la señora Rodríguez se opuso. Igualmente, relató que la señora Descartes le refirió un resumé de la novia de su hijo a la señora Rodríguez para que la consideraran a una plaza a la cual no cualificaba.

Se desprende de la *Querella* que la señora Rodríguez indicó que, en varias ocasiones, se quejó con la Directora de Recursos Humanos en Estados Unidos, la señora Elizabeth Edwards, sobre las irregularidades que presenció. La Recurrida esgrimió que el 9 de octubre de 2023, la señora Beberena la despidió de su puesto en Salvation Army. Ante este cuadro fáctico, la señora Rodríguez solicitó los siguientes remedios:  una compensación por daños económicos ascendientes a doscientos mil dólares ($200,000.00); una indemnización por sufrimientos y angustias mentales

valorados en doscientos cincuenta mil dólares ($250,000.00); la reinstalación de su puesto; el pago de la doble penalidad; el pago de mesada más los gastos de costas y honorarios de abogado.

En respuesta, el 1 de diciembre de 2023, Salvation Army presentó *Contestación a Querella*.[2] Mediante esta, negó ciertas alegaciones y levantó las correspondientes defensas afirmativas. En lo pertinente, afirmó que el despido de la señora Rodríguez estuvo relacionado con el buen funcionamiento del establecimiento y no fue arbitrario ni caprichoso. Detalló que la Recurrida mostró una conducta insubordinada, hizo imputaciones falsas, creó apariencias de conducta impropia que trastocaron el ambiente de trabajo entre otras alegaciones. Específicamente, esbozó que la Recurrida no manejó bien el reclutamiento de la señorita Rebeca Mercado, lo que creó un ambiente tenso por constantes cuestionamientos no fundamentados.

Así las cosas, el 14 de marzo de 2024, el foro primario celebró la vista de conferencia inicial.[3] En esta, la representación legal de las partes se puso de acuerdo en cómo se llevaría a cabo el descubrimiento de prueba. Tras varios trámites procesales, el 17 de enero de 2025, las partes presentaron *Informe Sobre Conferencia Preliminar entre Abogados*.[4] Por virtud de este escrito, tanto la Peticionaria como la Recurrida enunciaron sus respectivas teorías legales y la prueba que pretendían presentar en el juicio, la cual incluía a ciertos testigos.

Subsiguientemente, el 21 de enero de 2025, el foro primario celebró la vista de conferencia con antelación a juicio.[5] En esta, se discutió varios asuntos relacionados con la prueba propuesta por las partes. En lo atinente a la controversia ante nuestra consideración, se levantó una objeción referente a unos médicos

---

[2] *Íd.*, págs. 8-19.
[3] *Íd.*, págs. 33-34
[4] *Íd.*, págs. 68-94.
[5] *Íd.*, págs. 120-121.

que la Recurrida pretendía utilizar como testigos, ya que estos no habían sido anunciados como tal. Ante esta objeción, el foro primario permitió que los médicos testificaran. Inconforme, el 22 de enero de 2025, Slavation Army presentó *Solicitud de Reconsideración a Determinación del Tribunal de Permitir como Testigos a Individuos que no Fueron Notificados como Potenciales Testigos Durante el Descubrimiento de Prueba.*[6] En esta, la Peticionaria reiteró que la Recurrida omitió notificar a estos facultativos médicos como testigos previos al cierre del descubrimiento de prueba, por lo que solicitó que se eliminaran a los galenos de la lista de testigos. Evaluado este escrito, el 30 de enero de 2025, el foro *a quo* emitió el siguiente dictamen:

> Por entender que los testigos anunciados en el Informe de Conferencia con Antelación al Juicio; Dr. Raúl Benítez y Dr. Ángel Ayala; no son sorpresivos y que los expedientes médicos de donde surgen los nombres fueron enviados previo a culminar el descubrimiento de prueba indicando que serían utilizados en el juicio, se declara NO HA LUGAR, la Moción de Reconsideración de la parte querellada.[7]

Inconforme aun, el 31 de enero de 2025, la Peticionaria presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> Erró el Tribunal de Primera instancia y abusó de su discreción al permitir como testigo de la parte Recurrida a individuos que no fueron notificados como testigo durante el descubrimiento de prueba, máxime cuando tampoco permitió llevara a cabo descubrimiento de prueba en cuanto a ellos.

El 4 de febrero de 2025, la señora Rodríguez presentó *Moción de Desestimación Bajo la R. 83 (B)(1) DE Reglamento del Tribunal de Apelaciones.* Por virtud de este escrito, la Peticionaria argumentó que dado a que el presente caso se instó de conformidad con el procedimiento establecido en la Ley Núm. 2, esta Curia carecía de jurisdicción para atender el recurso. El fundamento para dicho

---

[6] *Íd.*, págs. 95-102.
[7] *Íd.*, pág. 122.

argumento responde a que conforme lo resuelto por el Tribunal Supremo de Puerto Rico en *Dávila v. Antilles Shipping, infra,* y *Medina Nazario v. McNeil Healthcare LLC, infra,* la revisión de resoluciones interlocutorias en casos de procedimiento sumario de reclamaciones laborares esta limitado a dos escenarios, los cuales no se encuentran presente en este caso. Por consiguiente, solicitó la desestimación del recurso de epígrafe. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

***A. Certiorari***

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.,* 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser

planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR __ (2023), 2023 TSPR 145, resuelto el 19 de diciembre de 2023. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra*, págs. 712-713. No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

**B. Ley de Procedimiento Sumario de Reclamaciones Laborales**

La *Ley de Procedimiento Sumario de Reclamaciones Laborales,* Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.* ("Ley Núm. 2") "provee un procedimiento sumario para

la tramitación y adjudicación de pleitos laborales". *Patiño Chirino v. Parador Villa Antonio,* 196 DPR 439, 446 (2016). Con su adopción, el legislador pretendió brindarle a los obreros y empleados un mecanismo procesal judicial capaz de lograr la rápida consideración y adjudicación de las querellas que éstos presenten contra sus patronos. La naturaleza de este tipo de reclamación exige celeridad en su tramitación, pues de esta forma se adelanta la política pública de proteger al obrero y desalentar el despido injustificado. Véase, *Díaz Santiago v. PUCPR et al.,* 207 DPR 339 (2021).

Debido a la celeridad con la que deben encausarse los casos tramitados al amparo de esta Ley, se alteraron ciertos términos y condiciones que rigen la litigación civil en nuestro ordenamiento jurídico procesal. *Díaz Santiago v. PUCPR et al., supra,* pág. 347. Cónsono con ello, la propia Ley dictamina que los casos tramitados con arreglo a dicho estatuto "se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones de las mismas o con el carácter sumario del procedimiento establecido por [dicha] [L]ey" 32 LPRA sec. 3120. Véase, además, *Díaz Santiago v. PUCPR et al., supra.*

Cuando se entabla una reclamación bajo el procedimiento sumario y se notifica a la parte querellada mediante copia de la querella, la Sección 3 de la Ley Núm. 2, *supra,* establece que el querellado presentará la contestación por escrito dentro de los diez (10) días siguientes a la notificación de la querella, si ésta se hiciere en el distrito judicial donde se promueve la acción, y en los quince (15) días en los demás casos. 32 LPRA sec. 3120; Véase, además, *León Torres v. Rivera Lebrón,* 204 DPR 20, 31 (2020). De esta normativa surge el deber inequívoco del tribunal de darle un cumplimiento cabal al procedimiento dispuesto en la Ley Núm. 2, *supra,* pues el tribunal carece de jurisdicción para extender el

término para contestar una querella. *Íd.* "[U]nicamente se considerarán solicitudes del querellado para extender el término para contestar la querella si se consigna bajo juramento causa justificada para ello". "En ningún otro caso tendrá jurisdicción el tribunal para conceder esa prórroga". *Íd.*

Por su parte, la Sección 4 de la Ley Núm. 2, *supra* establece que, si el querellado no radicara su contestación a la querella en la forma y en el término dispuesto, el juez dictará sentencia contra el querellado, a instancias del querellante, concediendo el remedio solicitado. La sentencia a esos efectos será final y de la misma no podrá apelarse. 32 LPRA sec. 3121. La consecuencia de que el querellado no conteste dentro del término prescrito sin acogerse a la prórroga, o cuando del expediente no surjan las causas que justifiquen la dilación, es la anotación de la rebeldía y la concesión del remedio solicitado sin más citarle ni oírle. *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 935 (2008).

Ahora bien, en cuanto al término que dispone la parte que se considere perjudicada de un dictamen en una reclamación bajo el procedimiento sumario, la Sección 9 de la Ley Núm. 2 dispone que "podrá interponer recurso de apelación ante el Tribunal de Apelaciones, en el término jurisdiccional de diez (10) días, computados a partir de la notificación de la sentencia del Tribunal de Primera Instancia". 32 LPRA sec. 3127.

Sin embargo, el Tribunal Supremo de Puerto Rico aclaró que "de ordinario, la revisión de resoluciones interlocutorias era contraria al carácter sumario del procedimiento laboral y que, por lo tanto, la facultad de los tribunales apelativos al revisar dichas resoluciones es limitada". *Díaz Santiago v. PUCPR et al.*, *supra,* pág. 348. citando *Davila, Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 496-497 (1999). No obstante, nuestra Máximo Foro concluyó que dicha norma no es absoluta por lo que exceptuó la prohibición

en las siguientes circunstancias: **(1) cuando el foro primario haya actuado sin jurisdicción; (2) en situaciones en las que la revisión inmediata dispone del caso por completo, y (3) cuando la revisión tenga el efecto de evitar una grave injusticia** (Énfasis nuestro). *Íd.,* pág. 349. En estas instancias, el carácter sumario de la Ley Núm. 2 cede y los foros apelativos podemos ejercer nuestra función revisora. *Íd.*

### C. Jurisdicción

Como cuestión de umbral, antes de considerar los méritos de un recurso, a este Tribunal le corresponde determinar si posee jurisdicción para atender el recurso ante su consideración. *SLG Solá-Moreno et al v. Bengoa Becerra,* 182 DPR 675, 682 (2011). "[L]a jurisdicción es la autoridad con la que cuenta el tribunal para considerar y decidir los casos y controversias que tiene ante sí". *Miranda Correa v. DDEC et al.*, 211 DPR 738, 745 (2023), citando a *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384 (2022). "Es norma reiterada que los tribunales deben ser celosos guardianes de su jurisdicción y el foro judicial *no* tiene discreción para asumir jurisdicción allí donde no la hay". *Beltrán Cintrón et al. v. ELA et al.,* 204 DPR 89, 101 (2020. Esto nos impone el deber de examinar la jurisdicción antes de expresarnos.

Cuando los tribunales carecen de jurisdicción deberán así declararlo y desestimar el recurso. *González v. Mayagüez Resort & Casino,* 176 DPR 848, 855-856 (2009). Sobre ello, nuestra máxima Curia ha expresado lo siguiente:

> Reiteradamente hemos expresado que la ausencia de jurisdicción sobre la materia da lugar a las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del

procedimiento, a instancia de las partes o por el tribunal *motu proprio*. *Beltrán Cintrón et al. v. ELA et al., supra,* págs. 101-102. (Comillas y citas omitidas).

**III.**

En el presente recurso, la Peticionaria solicita nuestra intervención discrecional por vía del recurso de autos, a los efectos de que revoquemos la *Orden* emitida por el foro primario en corte abierta, en la que admitió a dos (2) facultativos médicos como testigos. Dicha determinación se realizó en el ejercicio de su discreción. Por su parte, la señora Rodríguez solicitó la desestimación del recurso pues este recurre de una resolución interlocutoria en un procedimiento al amparo de la Ley Núm.2, *supra.* Veamos.

En primer lugar, es preciso subrayar que el caso que nos ocupa, en efecto, se instó por virtud del procedimiento sumario de reclamaciones laborares a tenor con la Ley Núm. 2, *supra.* Asimismo, la Peticionaria recurre de una orden interlocutoria. Es norma firmemente reiterada que la revisión de resoluciones interlocutorias provenientes de casos que se han acogido al aludido procedimiento sumario **procederá únicamente** en las siguientes circunstancias: **(1) cuando el foro primario haya actuado sin jurisdicción; (2) en situaciones en las que la revisión inmediata dispone del caso por completo, y (3) cuando la revisión tenga el efecto de evitar una grave injusticia.** *Díaz Santiago v. PUCPR et al.*, *supra.* pág. 349. Ello responde a que las revisiones de resoluciones interlocutorias son contrarias al carácter sumario del procedimiento dispuesto en la Ley Núm. 2, *supra.*

Luego de considerar el expediente ante nuestra consideración, no encontramos presente ninguna de las excepciones antes mencionadas que nos permita intervenir en el presente caso. En ese sentido, declaramos *Ha Lugar* la moción de

desestimación presentada por la señora Rodríguez. Por consiguiente, carecemos de jurisdicción para atender el presente recurso por lo cual procede desestimar el mismo.

**IV.**

Por los fundamentos expuestos, **desestimamos** el recurso presentado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA.  LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones